J-S37001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1041 EDA 2023 |

Appeal from the Order Entered March 27, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000228-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: C.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1042 EDA 2023 |

Appeal from the Order Entered March 27, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000229-2023

BEFORE: BENDER, P.J.E., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED NOVEMBER 28, 2023**

A.M. ("Mother") appeals from the orders of adjudication and disposition entered by the Philadelphia County Court of Common Pleas on March 27, 2023, with respect to her sons, L.R., born in December of 2011, and C.R., born in April of 2019 (collectively, "the Children").[1] We affirm.

---

[1] The Children's father died of a drug overdose on a date unspecified in the record. *See* N.T., 3/27/23, at 10.

The certified record reveals that the Philadelphia Department of Human Services ("DHS") received a general protective services report as well as a supplemental report on March 3, 2023, which raised concerns regarding Mother's "behavioral health." N.T. at 6-7. On March 9, 2023, the DHS investigator, Gabrielle Rivera, visited Mother and the Children in their home, at which time Mother denied the concerns set forth in the report. *Id.* at 7-8. However, Mother made concerning statements to Ms. Rivera, including "stating that there w[ere] toys delivered to the home with cameras in them. She also was reporting that people were breaking into her home and changing her bleach and her son's gel to aloe, and her eyelash glue to suntan lotion." *Id.* at 8. Further, Ms. Rivera testified that Mother "believed that someone was messing with her and also hacking her phone." *Id.* at 9.

Later that day, the trial court issued orders of protective custody with respect to the Children, and DHS placed them in the home of their paternal aunt. *Id.* at 10-11. The trial court held a shelter care hearing on March 10, 2023, which resulted in the court lifting the orders of protective custody and ordering the temporary commitment of the Children to stand.

In addition, Mother was involuntarily committed to a mental health hospital identified as Malvern Hospital on March 10, 2023. *Id.* at 9-10, 19.[2] According to Fela Hope, the community behavioral health court representative, Mother was discharged from the hospital on March 16, 2023,

---

[2] ***See*** Mental Health Procedures Act, 50 P.S. § 7302 (Involuntary examination and treatment authorized by a physician).

with the recommendation "that she do an [intensive outpatient program] and medication management." *Id.* at 19.

On March 14, 2023, DHS filed dependency petitions pursuant to the Juvenile Act, 42 Pa.C.S. §§ 6301-6365. The subject proceeding occurred on March 27, 2023. By this time, the Children were placed in "general foster care" after their paternal aunt informed DHS on March 14, 2023, that she was no longer willing to care for them. *Id.* at 11.

DHS presented the testimony of Ms. Rivera and Ms. Hope. Mother appeared for the proceeding and was represented by counsel, but she did not testify. Mother introduced a single piece of documentary evidence during the hearing, which the court admitted — "a letter from Prevention Point Philadelphia in regard to Mother being a participant in their stabilization-treatment-engagement program ('STEP')." Trial Court Opinion ("TCO"), 6/26/23, at 7 (citing N.T. at 22).

By orders of adjudication and disposition dated and entered on March 27, 2023, the court adjudicated the Children dependent pursuant to 42 Pa.C.S. § 6302, found that allowing the Children to remain in Mother's home would be contrary to their welfare, and transferred legal custody of the Children to DHS.

Mother timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte*. The trial court filed its Rule 1925(a) opinion on June 26, 2023.

On appeal, Mother raises the following issues for review:

> 1. Did the trial court err as a matter of law and abuse its discretion by adjudicating [the Children] to be "dependent children" pursuant to 42 Pa.C.S.[] § 6302 in the absence of clear and convincing evidence that [the Children] were presently "without proper parental care and control … as required by law?"
>
> 2. Did the trial court err as a matter of law and abuse its discretion by relying on inadmissible hearsay statements to adjudicate [the Children] to be "dependent children" pursuant to 42 Pa.C.S.[] § 6302?
>
> 3. Did the trial court err as a matter of law and abuse its discretion by committing [the Children] to the legal custody of [DHS] in the absence of clear and convincing evidence that removal from Mother was clearly necessary?

Mother's Brief at 3-4.

> Our standard of review for dependency cases is as follows:
>
> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citation omitted).

A dependency hearing is a two-stage process governed by the Juvenile Act ("Act"), 42 Pa.C.S. §§ 6301-6365. The first stage requires the trial court to hear evidence on the dependency petition and to determine whether the child is dependent. 42 Pa.C.S. § 6341(a). Section 6302 defines a "dependent child," in part, as one who

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other

- 4 -

custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S. § 6302. This Court has held that a child will only be declared dependent when he is presently without proper parental care or control, and when such care and control are not immediately available. *In the Interest of R.T.*, 592 A.2d 55, 57 (Pa. Super. 1991).

The Act provides, "[i]f the court finds from clear and convincing evidence that the child is dependent," then the second stage of the dependency process requires that the court make an appropriate disposition based on an inquiry into the best interests of the child pursuant to Section 6351(a) and (b). 42 Pa.C.S. § 6341(c); *see also In re B.S.*, 923 A.2d 517, 521 (Pa. Super. 2007). This Court has defined "clear and convincing" evidence as testimony that is "so direct and unambiguous as to enable the trier of fact to come to a sure determination, without conjecture, of the truth of the exact facts at issue." *In the Matter of C.R.S.*, 696 A.2d 840, 845 (Pa. Super. 1997).

Regarding when a child should be removed from parental custody, this Court has stated:

The law is clear that a child should be removed from her parent's custody and placed in the custody of a state agency only upon a showing that removal is clearly necessary for the child's well-being. In addition, this [C]ourt had held that clear necessity for removal is not shown until the hearing court determines that alternative services that would enable the child to remain with her family are unfeasible.

*In Interest of K.B.*, 419 A.2d 508, 515 (Pa. Super. 1980) (citations omitted).

In addition, we have stated, "it is not for this [C]ourt, but for the trial court as factfinder, to determine whether [a child's] removal from her family was

- 5 -

clearly necessary." ***In the Interest of S.S.***, 651 A.2d 174, 177 (Pa. Super. 1994).

In her first issue, Mother argues that the statements she made to the DHS investigator at the time of her visit were insufficient evidence to adjudicate the Children dependent. ***See*** Mother's Brief at 12-13. Further, Mother argues that DHS did not present any evidence that her mental health impacted her ability to provide proper parental care to the Children. ***See id.*** Likewise, Mother argues that DHS did not present any evidence that she was using illicit drugs or that her drug use impacted her ability to provide proper parental care. ***See id.*** at 13. We disagree.

> In its Rule 1925(a) opinion, the trial court found as follows, in part:

> While the Children were in Mother's care, Mother was having hallucinations and displaying erratic behavior to the extent that she needed to be hospitalized. (N.T. … at 6-9). DHS's investigator witnessed Mother's paranoia and erratic behavior firsthand while at Mother's home. (***Id.*** at 6-10). Mother informed her that toys were delivered to the home with cameras in them. (***Id.*** at 8). Mother also told the investigator that people had broken into the home and tampered with bleach and personal hygiene products in the home. (***Id.***) The investigator checked the bleach and personal hygiene products and did not find anything abnormal or concerning. (***Id.*** at 16). Mother refused mental health treatment but admitted that "bad things have been happening to her" since 2018. (***Id.*** at 8).

> \*\*\*

> The hospital determined that Mother's diagnosis is bipolar disorder, delusional disorder, and substance abuse and recommended that Mother participate in an intensive outpatient program and medication management. (N.T. … at 19). DHS has not received an update regarding Mother's treatment and Mother has refused to sign any release of information. (***Id.*** at 10). Additionally, Mother's attorney admitted into evidence a letter

from Prevention Point Philadelphia that included drug test results from September 2, 2022[,] which was six months prior to the adjudication hearing, thus, making them irrelevant to support her denial of substance use issues. (***Id.*** at 24). … Because of the seriousness of Mother's mental health concerns, Mother's lack of treatment and [the court's] lack of knowledge regarding Mother's substance abuse/use, this [c]ourt does not believe Mother can keep the Children safe….

TCO at 9-10.  The record supports the court's findings.

Indeed, Ms. Hope testified that specialists at the mental hospital where Mother was involuntarily committed approximately ten days before the subject proceeding, that is, from March 10-16, 2023, diagnosed her with "unspecified bipolar, delusional disorder, and substance abuse."  N.T. at 19.  Ms. Hope testified that Mother had a follow-up appointment on March 21, 2023, but she was unable to confirm that Mother attended.  ***Id.***

Mother presented a single document, a one-page letter dated March 17, 2023, from Prevention Point Philadelphia, stating that she was a participant in the STEP program which included "medically assisted treatment and case management services."  Exhibit M-1.  Attached to the letter was a lab report from Mother's drug screen on September 2, 2022, more than six months before Mother was involuntarily committed as well as six months before the subject proceeding, which was negative for illicit substances.  In addition, the letter stated Mother had "an appointment with psychiatric services at JFK for April 21st [at] 10:30 a.m. to ensure she is receiving wrap-around services."  Exhibit M-1.

Thus, the trial court was presented with competent evidence that Mother suffered from mental illness with symptoms that included hallucinations. Mother was also diagnosed with substance abuse the same month that the dependency hearing occurred, and the court was presented with no evidence to contradict this diagnosis. Although Mother was participating in the above-described STEP program and had a future appointment scheduled for psychiatric services, there was no evidence with respect to the stability of Mother's mental health at the time of the hearing. Further, Ms. Rivera testified that the Children needed "to be connected to therapy and also grie[f] counseling. Also [L.R.] was diagnosed with dyslexia, so he needs to be connected to the services as well." N.T. at 12. Based on this evidence, we discern no abuse of discretion by the trial court's conclusion that the Children are without proper parental care or control necessary for their physical, mental, or emotional health. **See** 42 Pa.C.S. § 6302.

In her second issue, Mother argues that the court abused its discretion and/or erred by relying on inadmissible hearsay statements from Ms. Rivera and Ms. Hope in adjudicating the Children dependent. Specifically, she asserts that Ms. Rivera adduced inadmissible hearsay testimony relating to the allegations set forth in the general protective services report, and Mother's involuntary commitment to the mental health hospital. **See** Mother's Brief at 18 (citing N.T. at 6-7, 9-10). Mother also claims that Ms. Hope espoused inadmissible hearsay testimony relating to the diagnoses and recommended

treatment received by Mother as a result of her involuntary commitment. *See id.* at 18-19 (citing N.T. at 19). We disagree.

It is well-settled that, "decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party." *Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014) (citation omitted).

> The Pennsylvania Rules of Evidence define hearsay as a statement that:
>
> (1) the declarant does not make while testifying at the current trial or hearing; and
>
> (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Pa.R.E. 801(c).

> This Court has explained:
>
> As a general rule, hearsay is inadmissible, because such evidence lacks guarantees of trustworthiness fundamental to our system of jurisprudence. The rule against admitting hearsay evidence stems from its presumed unreliability, because the declarant cannot be challenged regarding the accuracy of the statement. Notably, it is elemental that, [a]n out of court statement which is not offered for its truth, but to explain the witness' course of conduct is not hearsay.

*In re K.A.T.*, 69 A.3d 691, 702 (Pa. Super. 2013).

First, with respect to Ms. Rivera's testimony regarding the concerns raised in the general protective services report, we conclude that it was not offered for the truth of the matter asserted, but to explain how the Children became known to DHS. Therefore, it did not constitute hearsay.

We also conclude that Ms. Rivera's testimony regarding Mother's being involuntarily committed did not constitute inadmissible hearsay because Ms. Rivera requested that "mobile crisis" visit Mother on March 9, 2023, which resulted in Mother's involuntary commitment. **See** N.T. at 9-10, 19. As the DHS investigator in this case, there is no indication in the record that Ms. Rivera's testimony regarding Mother being involuntarily committed is disputed or otherwise untrustworthy. Rather, Mother's involuntary commitment is a well-established matter of record pursuant to Ms. Rivera's personal knowledge of these matters. **See, e.g.**, **Commonwealth v. Johnson**, 838 A.2d 663, 673 (Pa. 2003) (holding that where a declarant's testimony is based upon the individual's "personal knowledge" and not a mere "repetition of hearsay declarations" then such testimony is permissible and does not constitute hearsay). Furthermore, the fact of Mother's involuntary commitment is corroborated by the trial court's March 10, 2023 protective custody orders.

Second, the relevant testimony by Ms. Hope is as follows on direct examination by DHS's counsel:

A. As far as mom's mental health, I do have that she was admitted on a 302 to [the mental health hospital] on 3/10. She was discharged on 3/16. They did recommend that she do an [intensive outpatient program] and medication management….

Q. [W]hat were mom's diagnoses at [the mental hospital]?

A. Mom —

[Mother's counsel]: Objection, hearsay.

THE COURT: Overruled.

> A. Mom's diagnosis is unspecified bipolar, delusional disorder, and substance abuse (inaudible).

N.T. at 19.

With respect to Ms. Hope's testimony regarding Mother's specific diagnoses, Mother does not indicate that this information is untrustworthy or based upon a hearsay declaration. Our review of the record indicates that Ms. Hope's testimony is based upon her personal knowledge, which she gathered as a result of being the community behavioral health representative in the underlying matter. **See**, **e.g.**, **Johnson**, 838 A.2d at 673.

Even assuming, *arguendo*, that Ms. Hope's testimony constituted inadmissible hearsay, we would conclude that any erroneous admission would be harmless. It is clear that the trial court did not base its dependency finding upon these diagnoses but upon Ms. Rivera's direct observations of Mother. **See** TCO at 9 ("Mother was having hallucinations and displaying erratic behavior to the extent that she needed to be hospitalized. DHS's investigator witnessed Mother's paranoia and erratic behavior firsthand while at Mother's home.") (citing N.T. at 6-10). Thus, even if Ms. Hope's testimony adduced in this respect was inadmissible hearsay, we would deem it to be harmless error.

Next, concerning Ms. Hope's testimony about Mother's treatment recommendations, we conclude Mother's argument that it was inadmissible hearsay is waived due to her counsel's failure to object during the proceeding. **See In re S.C.B.**, 990 A.2d 762, 767 (Pa. Super. 2010) (stating, "[i]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial

court.  Failure to timely object to a basic and fundamental error will result in waiver of that issue.") (citation omitted); *see also* N.T. at 19.  Even if not waived, we would conclude that it is meritless.

Indeed, Mother introduced, and the court admitted into evidence, the above-described letter from Prevention Point Philadelphia, stating that she was a participant in the STEP program which included "medically assisted treatment and case management services."  Exhibit M-1.  In addition, the letter stated Mother had "an appointment with psychiatric services at JFK for April 21st [at] 10:30 a.m. to ensure she is receiving wrap-around services." *Id.*  Based on this evidence, there is no dispute that Mother needed mental health services, but the exact nature of the treatment and the extent of her mental health instability was not revealed during the hearing.  Therefore, even if Mother did not waive this argument, we would conclude that it is meritless.

In her third and final issue, Mother argues that the evidence was insufficient for the court to remove the Children from her home.  Specifically, she asserts that DHS did not consider "whether alternative services such as in-home services and court ordered supervision could meet the Children's current needs."  Mother's Brief at 23.  We disagree.

As best we can discern, Mother's argument involves the following provision of the Act, in relevant part:

**§ 6351 Disposition of dependent child.**

. . .

**(b)  Required preplacement findings. —** Prior to entering any order of disposition under subsection (a) that would remove a

- 12 -

dependent child from his home, the court shall enter findings on the record or in the order of court as follows:

(1) that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and

(2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or

(3) if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances; or….

42 Pa.C.S. § 6351(b)(1)-(3).

In this case, the trial court found that allowing the Children to be returned to Mother's home would be contrary to their welfare. Section 6351(b)(3), not (b)(2), is applicable because the Children were initially removed from Mother by an order of protective custody. As such, preventive services were not offered to Mother when the Children were placed on March 9, 2023. By adjudicating the Children and placing them in foster care, the court found that the lack of preventive services was reasonable, and the Children's placement in foster care was clearly necessary, in light of the testimony of Ms. Rivera.

Specifically, as detailed above, Ms. Rivera observed Mother's paranoia and erratic behavior on March 9, 2023, and she was involuntarily committed the next day. Further, Mother's exhibit M-1 demonstrated that her mental health condition necessitates "medically assisted treatment and case management services," the details of which were not presented to the trial

court. We will not disturb the court's conclusion that it was necessary to remove the Children from Mother. Accordingly, we affirm the orders.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/28/2023